CHARLES A. NUTTING *et al.*, plaintiffs in error, *vs.* OSCAR THOMASON *et al.*, defendants in error.

1. When an administrator sells railroad stock, the property of the estate which he represents, at private sale, and his vendee sells to a *bona fide* purchaser without notice, the title of such purchaser will be protected, as against the heirs of said estate. (R.)

2. If the original purchasers of this stock bought it from the administrator at private sale, under such circumstances as the law will charge them with notice, and have either appropriated it to their own use or sold it to others, then they are liable to the heirs for a conversion of it, such purchase being a fraud upon their rights. (R.)

3. In the absence of any fraud or collusion on the part of the railroad company, the mere transfer of the stock on the books thereof to the purchaser, by direction of the administrator, will not make the company liable as a guarantor or warrantor of the vendor's title to the stock. (R.)

Private sale by administrator. Railroad stock. *Bona fide* purchaser. Before Judge COLE. Bibb Superior Court. October Adjourned Term, 1871.

For the facts of this case, see the decision.

NISBETS & JACKSON; A. O. BACON, for plaintiffs in error.

WHITTLE & GUSTIN; LYON & IRVIN; W. K. DEGRAF-FENREID; B. & W. B. HILL; JACKSON, LAWTON & BAS-INGER, for defendants, submitted the following brief: 1st. No title, either legal or equitable, passed by the sales by Usher, and the sales were absolute nullities: Code, secs. 2513, 2514; Worthy *vs.* Johnson, 8 Ga., 236; 10 Ga., 358; Wyman *vs.* Campbell, 6 Porter, (Ala.,) 219; Neal *vs.* Patten, 40 Ga., 365; Southwestern R. R. Co. *vs.* Thomason, 40 Ga., 408. 2d. Code, sec. 2303, only applies when legal title passes by sale: Daniel *vs.* Hollinshead, 16 Ga., 190. 3d. The purchasers in this case had actual notice by the transfer; they claim title by the transfer alone: Charter of S. W. R. R., sec. 10; Acts of 1845, p. 136. As to what is notice: Jordan *vs.* Pollock, 14 Ga., 145. 4th. The title to the personal estate only vested in Usher as administrator, and not as distributee: Code, sec. 2447. He was indebted to the estate at the time of these sales more than his interest in it, and could therefore convey no interest in it to another. 5th. Defendant Nutting is liable for value of stock and dividends. He has wrongfully obtained possession of the property of the estate of Wakeman, and disposed of it in such a manner that it cannot be traced, and has received the proceeds. He cannot, in equity, hold these proceeds against the distributees of the estate: Code, secs. 2307, 3094, 3095; Rogers *vs.* Fort, 19 Ga., 94. 6th. Under the facts of this case, the purchasers of the stock were joint wrong-doers with Usher, and their equity is inferior to that of the sureties on his bond, who are innocent: Nutting *vs.* Boardman, (July Term, 1871,) 43 Ga., 598. There is no question of superior and inferior equity as between them and complainants, who have a strict legal right. 7th. This Court has already decided the Southwestern Railroad Company not liable to complainants for the stock, even

if the transfers were fraudulent : Southwestern R. R. Co. *vs.* Thomason, 40 Ga., 408.   If any fraud the purchasers participated, and will not be relieved in equity : Code, sec. 3038. Certainly, innocent parties will not be delayed to settle equities among wrong-doers.   8th. No one is injured by the failure of the Court to charge as to verdict against Usher, he being shown to be insolvent, and no verdict could have been rendered by which the purchaser would be benefited.   If applied for by counsel for Nutting and others, a decree could have been rendered by the Chancellor upon the order taking the bill *pro confesso* and the decretal verdict : Code, secs. 4147, 4153, 4154.   9th. In this case a new trial should not be granted, even if the decree below is wrong.   The case is fully before the Supreme Court upon the facts, and all parties represented, and it ought to be finally disposed of: Code, sec. 4219.

WARNER, Chief Justice.

The complainants filed their bill against the defendants to recover forty shares of stock in the Southwestern Railroad Company, which had been sold by the administrator of Wakeman at private sale.   On the trial of the case, as it appears from the evidence in the record, it was proved that, on the 28th December, 1865, Usher, the administrator of Wakeman, sold and transferred to Nutting twenty-five shares of the stock at private sale ; that on the 21st of March, 1866, Usher, the administrator, sold and transferred to Cubbedge, Caldwell & Company fifteen shares of the stock at private sale, the transfer of stock in each case being signed by Usher as administrator of Wakeman.   On the 21st March, 1866, Cubbedge, Caldwell & Company sold and transferred the fifteen shares purchased by them to J. S. Pope, and on the 5th day of September, 1866, Pope sold and transferred the same fifteen shares of stock to James Stinson. The twenty-five shares of stock purchased by Nutting was not traced into the hands of any particular person as the

Nutting *et al.*, *vs.* Thomason *et al.*

holder thereof, but Nutting had long since disposed of it. The Court charged the jury, "that the Supreme Court have decided that the sale of the stock by Usher was utterly null and void, and conveyed no title to the purchasers. The Supreme Court have also decided that the company is not responsible to the heirs, but that the purchasers of the stock are. I charge you, that if Nutting, and Cubbedge & Hazlehurst purchased this stock from Usher at private sale, they got no title, and are liable to these complainants for the value of the stock and the dividends they have received on the same. If Nutting, and Cubbedge & Hazlehurst have disposed of this stock, and can trace it into the hands of others, they will not be liable; if they cannot trace it, they are themselves still liable."

The jury found a verdict against Nutting for the value of the twenty-five shares of stock purchased by him, and for the dividends received by him thereon, with interest on said dividends from 1st March, 1866. The jury found a verdict against Stinson for the value of the fifteen shares of stock purchased by him, which he might discharge by the delivery of the stock, with all dividends received thereon; and also found against him $412.50 for dividends received by him on the stock, with interest on said dividends from the 15th July, 1868. The defendants made a motion for a new trial, on the ground of error in the charge of the Court to the jury, and for refusing to charge as requested, as set forth in the record, and because the verdict was contrary to law and evidence, which motion was overruled, and the defendants excepted.

In view of the facts of this case, as disclosed in the record, we think the charge of the Court to the jury was error, especially in regard to the liability of Stinson, who appears to have been a *bona fide* purchaser for the value of fifteen shares of stock from Pope, without notice of fraud in the sale of the stock by Usher, the administrator to Cubbedge, Caldwell & Company. When this case was before this Court at a former term, on a demurrer to the complainant's bill, this

Court decided that the complainants had the right to maintain their suit against the defendants upon the allegations made in their bill; that the sale of the stock made by the administrator should have been made under the law at public sale; that the railroad company was not liable far allowing the transfer of the stock to be made by the administrator of Wakeman on the books of the company; that, in view of the facts of the case, the company should be made a party, and also that the holders of the stock should be made parties when discovered. This Court did not decide, and could not have decided, that the sale of the stock was utterly null and void, and conveyed no title, especially as to *bona fide* purchasers, who were not then before the Court, and there is nothing in the reported judgment of this Court to authorize such a conclusion: *Southwestern R. R. Co. vs. Thomason*, 40th *Ga Rep.*, 408. The 2514th section of the Code declares that all sales by administrators, (except of annual crops sent off to market and of vacant lands,) shall be at public outcry, between the hours of ten o'clock A. M. and four o'clock P. M., but this section of the Code does not declare that a sale made in any other manner *shall be void.*

The decisions made by this Court, before the adoption of the Code, in relation to administrator's sales of land and negroes, went upon the ground that there must be a judgment of the Court of Ordinary granting leave to sell that specific kind of property before the title could be divested. There was no order of the Ordinary required under the provisions of the Code for leave to sell this stock by the administrator; but he was required to sell it at public sale. Now, the question is, if the administrator of the estate does collude with the purchaser of the stock, and sells it to him at private sale, and such purchaser of the stock at private sale afterwards sells it to a *bona fide* purchaser for value, without notice that it was purchased of the administrator at private sale in fraud of the rights of the parties interested therein, will such *bona fide* purchaser of the stock be protected in a Court of equity?

This is an important question to the purchasers of stock in railroad companies.  It was said on the argument of this case, that the *bona fide* purchaser of the stock stood in no better condition than the *bona fide* purchaser of stolen property ; that inasmuch as the thief had no title to the property stolen, those who purchased it from him, or derived title under or through him, acquired no better title than he had, and he having none, the *bona fide* purchaser would acquire none. The thief who steals the property of another, has no right or claim to it, either under *color of title* or otherwise.  Is that a parallel case to the one made in the record now before us? There can be no dispute that the legal title to this stock was in Usher, the administrator of Wakeman.   It is true that he held the legal title to the stock in trust for the benefit of the heirs and creditors of his intestate : Code, 2447.  In violation of his duty, as such trustee, he conveyed the legal title to the purchaser at a private sale of the stock in fraud of the law, which required him to sell it at public sale, and in fraud of the legal rights of his *cestui que trusts,* that it should be so sold; and, as between him and the purchaser, the sale was not absolutely void, but voidable at the election of the parties interested in that sale, in the same manner as a private sale of land by an administrator under an obligation to perfect the title by legal formality :  Code, 2525.

As between the original parties to the sale and purchase of this stock, it was optional with the complainants whether they would ratify it or set it aside, on account of the fraud in the sale of it, as between the administrator and the purchasers thereof from him.  The purchasers from the administrator of the stock, under the facts disclosed in this record, were not innocent purchasers without notice.   The certificates of the transfer of the stock to them on the books of the company, was signed by Usher, as the administrator of Wakeman, and if they thought proper to trust to Usher, as their agent to make the transfer and bring them scrip for the stock in their own names, without looking into his title thereto, it was their

own fault and negligence, for which the law will hold them responsible. If the original purchasers of this stock purchased it from the administrator at private sale, with actual knowledge that it was the property of his intestate, or under such circumstances as the law will charge them with notice, and have either appropriated it to their own use or sold it to others, then they are liable to the complainants for a *conversion* of it, such purchase being a fraud upon their rights.

A title obtained by fraud, though voidable in the vendee, will be protected in a *bona fide* purchaser without notice : Code, 2598. Stinson purchased the fifteen shares of stock from Pope, to whom Cubbedge, Caldwell & Company, the original purchasers from Usher, had sold it. It appear from the evidence in the record, that Stinson was a *bona fide* purchaser of the fifteen shares of stock, for value, without notice of fraud in the sale thereof between Usher, the administrator, and Cubbedge, Caldwell & Company, and, as such *bona fide* purchaser, is entitled to be protected in his title thereto, and the Court should have so instructed the jury in its charge upon that question made in the case.

In the absence of any fraud or collusion on the part of the company, the mere transfer of the stock on the books thereof by the direction of the administrator to the purchaser of the stock, will not make the company liable as a guarantor or warrantor of the vendor's title to the stock. The purchaser of the stock must look to him from whom he purchased it : *Central R. R. and B. Co. vs. Ward et al.*, 37 *Ga, Rep.*, 531.

In our judgment, the Court below should have granted a new trial for error in the charge of the Court to the jury, and on the ground that the verdict was contrary to the law and the evidence, so far as the defendant, Stinson, is concerned.

Let the judgment of the Court below be reversed, and a a new trial granted.