JOHN ARDIS, trustee, plaintiff in error, *vs.* JOHN A. SMITH, administrator, *et al.*, defendants in error.

1. Where A, as administrator of B, sold the land of the estate to C, taking his notes for the purchase money, and giving bond for titles when the notes should be paid, and afterwards took from C certain negroes, and other effects, the property of C's wife under a trust deed, in part payment of the notes, taking a bill of sale to himself for the negroes and accounting to the estate for the amount credited on the notes:

*Held,* that upon obtaining a judgment upon the unpaid notes against C, it was the right of A, as administrator, to file his deed to the land, under the statute, in pursuance of his bond for titles to C, and sell the land for the unpaid purchase money, and that there is no equity in the trustee of the wife of C to follow the trust property misappropriated by C, even with the knowledge of the administrator of A, into the land or into the estate of A, to the injury of said estate.

2. No person but those interested in an estate as heirs or creditors, have a right to complain of any informality in a sale of the land of the estate so as to set aside the sale.

Injunction. Trusts. Administrators and executors. Before Judge McCUTCHEN. Gordon county. At Chambers. April 28th, 1874.

John Ardis, as trustee for Ann J. Skelly and her children, filed his bill containing substantially the following allegations:

A marriage contract was entered into on the 31st day of August, 1842, between one John G. C. Key, Ann J. Ardis and complainant, as trustee, whereby certain property, in said contract specified, was conveyed to complainant, in trust for certain purposes therein specified. He accepted the trust, and the marriage between said John G. C. Key and Ann J. Ardis was shortly thereafter solemnized. Key died without leaving any child of said marriage living. The said Ann intermarried with one Thomas W. Skelly on the 6th day of November, 1857. Skelly made a private contract with one John A. Smith, as administrator of one Abbott, deceased, for the purchase of a settlement of land at $12,000 00, with the understanding that said Smith was to get an order of court and sell the same, as administrator, at public sale, to perfect the title. Said land was sold by said Smith in the spring of the year

Ardis *vs.* Smith *et al.*

1860, and Skelly bid it off at $8,000 00, which was its full value at the time, but gave his notes for $12,000 00, in pursuance of said private contract of sale. Skelly was poor and had no property, and said Smith knew it at the time of said contract and sale. He also was aware of the fact that the property of which said Skelly was in possession and controlling was trust property under said marriage contract; yet, nevertheless, he expected to be paid for said land out of said property and money. Skelly paid to Smith, as administrator as aforesaid, out of said trust funds and property, the sum of $7,100 00, and he received the same with notice of that fact. An injunction was prayed against said Printup, as administrator of Thomas W. Skelly, restraining him from selling the land as the property of his intestate, but none was then prayed against said Smith, as administrator of said Abbott. Smith answered the bill, denying notice of the trust when he received said payments from said Skelly for said land.

On the 2d day of March, 1874, said Smith, as administrator, caused an execution that had been obtained in his favor for the unpaid purchase money of said land, against Printup, as administrator of Skelly, in the superior court of the county of Gordon, to be levied on said land, and caused the same to be advertised for sale by the sheriff under said execution. Complainant then amended his bill for the purpose of tracing the amount of said trust fund paid by said Skelly to said Smith, as administrator as aforesaid, and fixing the same as a trust on said land, and alleging that said Smith, as administrator, used and appropriated said trust funds to the payment of the debts of said Abbott, and that his estate was insolvent, and that said Smith was insolvent, and praying for an injunction against said Smith, as administrator, to restrain the sale of said land under said execution.

On the hearing of the application for injunction, the answer of said Printup was read, and also the answer of said Smith to the original and amended bills, denying notice of said trust at the times of said payments, and that either he or said estate was insolvent, and setting up that he had filed

a deed to the land in the clerk's office, conveying the same to said Skelly, and was proceeding to sell as provided by the statute.

Complainant read the answers of said Ann J. Skelly and Ellen Butler to interrogatories showing notice of said trust to said Smith at the time of said payments received by him from said Thomas W. Skelly. The chancellor refused the injunction and complainant excepted.

This is the third time this case has been before this court. See 39 Georgia Reports, 648; 49 Georgia Reports, 602.

WARREN AKIN; W. H. DABNEY, for plaintiff in error.

Trustee may follow misappropriated fund: Code, sections 2333, 3152. Abbott's estate ought to be charged therewith: 46 Georgia Reports, 297; 47 *Ibid.*, 73; 8 Massachusetts Reports, 209, cited in 11 Georgia Reports, 5; 24 Georgia Reports, 259; 2 Richardson, 239.

A. W. HAMMOND & SON, for defendants.

Smith bought the negroes for himself. He could not buy them for his wards. His answer denied every material averment in the bill: Connally *vs.* Cruger, 40 Ga. R., 261. The deed was not recorded in Georgia: Code, section 1778. By Mrs. Kelly's evidence, she and her husband consented: 40 Georgia Reports, 261, *supra.* If children lost by Ardis' carelessness, he is answerable and is solvent. Smith, administrator, could not bind Abbott's estate by contract: 11 Georgia Reports, 5; Worthy *vs.* Johnson, 8 Georgia Reports, 240, (7.) *A fortiori* is not the estate liable for his *torts.* Judge' discretion not abused.

McCAY, Judge.

1. Whilst we are not clear that equity would not authorize this lady to follow the effects, by her consent put into this land by her husband, yet we are not able to see how Abbott's estate can be charged with Smith's joinder with the husband in misappropriating the proceeds of his wife's estate. The

land was unquestionably the property of Abbott's estate, and his heirs and creditors had a full right to have the purchase money of it, and they are not to lose their title until they get it. Smith seems to have sold in good faith, took the husband's notes and gave his bond for titles. That the husband paid a portion of those notes by means and property that was not his, (he was not a trustee of it either) and that Smith used that money and the proceeds of these effects to pay Abbott's debts, does not by any rule of equity we know of authorize *this* trustee, the owner of it, to charge Abbott's estate. If Smith bought from the husband property that belonged not to him, but to the trustee of the wife, he simply got no title. The trustee could have brought trover for the negroes. We do not think a case can be found where equity has undertaken to follow the proceeds of property thus illegally purchased. It is not the case of a breach of trust. The husband was not the trustee. He sold property that did not belong to him; that is all. Can the holder of the legal title, merely because he is a trustee, follow the proceeds of the property. He might have sued whoever got the negroes, in trover, or he might have sued Smith, but it is reaching out the hand of a chancellor very far to let him follow the price of the property into Abbott's estate, because Smith used the money he got for it, or took it to pay the debts of the estate. It has been held that the owner of property stolen cannot follow the proceeds into other property in which the thief has invested it, except as an ordinary creditor. Much more is this true when the taking and selling, as was the case here, was a mere *tort:* Campbell *vs.* Drake, 4 Iredell E. R., 94. As we have said, here is no breach of trust. The husband was not the trustee, and if he were, we still are unable to see how, by the mutual breach of trust of Smith and the husband of Mrs. Skelly, the Abbott children are to lose the price agreed to be paid for their land.

2. As to the charge that Skelly agreed to pay more for the land than it was worth, and that there was informality in the sale, we do not see what these parties have got to do with

that. Skelly was of sound mind, and might make his own bargains, and if Abbott's estate finds no fault with the informality, surely nobody else can set it up.

Judgment affirmed.