# CASES

# SUPREME COURT OF GEORGIA

## OCTOBER TERM, 1908.

### SAPP v. CLINE.

1. Where a deed executed in 1857 recited the grantor as a named person, "administrator of the goods and chattels, rights and credits, and which were of [another named person], deceased, of the first part," and stated that the grantor, "administrator as aforesaid," conveyed certain described lots, and that in testimony thereof the grantor, "administrator," thereunto set his hand and seal, this was sufficient to show the intention of the maker of the deed to convey as administrator of the decedent, although the maker signed his individual name without the addition of his title as administrator.

2. An order was granted by the ordinary of Chatham county, authorizing a sale by an administrator of the lands of his intestate. The exact date of the order is not shown. The administrator made a deed to certain land in Baker county. The caption was, "State of Georgia, Baldwin County," and the deed was dated, "December 25, 1857." It contained no reference to the order of sale and no recital as to any public sale or the manner of the sale, but was merely a conveyance of the property to the grantee named therein. There was no aliunde evidence of any public sale, or that it was made in pursuance of the order of court, or any proof of possession under the deed. It was admitted as a muniment of title in behalf of a plaintiff seeking to recover the land; and the presiding judge charged in effect that the plaintiff's chain of title was sufficient to make out a prima facie case. *Held*, that the admission of the deed and the charge of the court on this subject were erroneous.

3. Under the circumstances recited, lapse of time, though more than 40 years before the institution of the suit, did not raise a presumption of regularity and authority to make the deed which would authorize its admission in evidence, without more.

4. Where a deed was made to land in a certain county, and under an act of the legislature provision was made for the creation of a new county, which would include the land within its boundaries, but a time was fixed when officers for the new county should be elected and its political and official organization should be perfected, the record of the deed in the original county prior to such time was a lawful recordation.

28     433

5. Where, pending an action to recover land, the plaintiff filed an affidavit alleging the forgery of a deed under which the defendant claimed title, this put the burden of proof, as to the genuineness of the deed attacked, on the party asserting it; and where this issue was by consent tried together with the other issues in the case, the burden of proving the genuineness of the deed still remained upon such party, as if that issue had been tried alone. *Holland* v. *Carter*, 79 *Ga.* 139 (3 S. E. 690).

6. If, upon an issue of forgery made by affidavit duly filed, a deed should be found to be forged, it would not operate to convey a good title to the grantee therein or persons holding under him; nor would the good faith of a subsequent holder suffice to make such conveyance a good transfer of title. Good faith would be immaterial unless title by prescription was involved.

Submitted April 7,—Decided October 13, 1908.

Equitable petition. Before Judge Spence. Mitchell superior court. October 23, 1907.

*Russell & Hawes,* for plaintiff in error.

*I. A. Bush & Sons* and *Shipp & Kline,* contra.

ATKINSON, J. This was a suit for the recovery of land, the cancellation of deeds, etc. The plaintiff obtained a verdict. A motion for a new trial was overruled, and the defendant excepted.

1. The plaintiff tendered in evidence a deed as follows: "State of Georgia, Baldwin County. This indenture made this 25th day of December in the year of our Lord one thousand eight hundred and fifty-seven (1857) between Michael Sheahan, formerly of Baldwin, but now of the county of Chatham and State of Georgia, administrator of the goods and chattels, rights and credits, and which were [of] James H. Sheahan, deceased, of the first part, and John Treanor of the county of Baldwin and State of Georgia of the other part, witnesseth: that the said Michael Sheahan, administrator as aforesaid, in consideration of the sum of eighteen hundred and seventy-five dollars ($1,875.00) to him in hand paid, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, and conveyed, and by these presents does bargain, sell, alien, and convey unto the said John Treanor, his heirs and assigns, the lots of land in the 11th district, formerly of the county of Early, now of the county of Baker, in said State, known in the plan of said county of Early as follows, viz.: lot number 67, lot number 88, lot number 113, lot number 288, lot number 343. To have and to hold the said lots of land unto him,

the said John Treanor, his heirs and assigns, together with [all] and singular the rights, members, and appurtenances and reversions, rents, and profits thereof, in fee simple. In testimony whereof the said Michael Sheahan, administrator, has hereunto set his hand and seal, the day and year above written. [Signed] Michael Sheahan (Seal). Signed, sealed, and delivered in the presence of And. W. Brady, J. N. Horne, Not. Pub., B. C." "Georgia, Baker county. Clerk's Office Superior Court. Recorded in Book 18, page 248, March 1, 1858. Thomas Allen, Clerk." Among the objections urged to the admission of this deed in evidence, it was insisted that the "deed appears to be the individual [act] of Michael Sheahan, and not an administrator's deed; there was no title in Michael Sheahan." This point is practically controlled by the ruling in *Tenant* v. *Blacker,* 27 *Ga.* 418, which has been followed in *Payton* v. *McPhaul,* 128 *Ga.* 517 (58 S. E. 50), and *Garrett* v. *Crawford,* 128 *Ga.* 524 (57 S. E. 792, 119 Am. St. R. 398), and is in full harmony with *Hart* v. *Lewis,* 130 *Ga.* 504 (61 S. E. 26). Upon an examination of the original record of file in the case first cited, the deed then under consideration appears to be very similar to that now before the court, and the two cases are parallel.

2, 3. The plaintiff offered in evidence the deed above referred to from Michael Sheahan, administrator of John Treanor, deceased, as a muniment of title. Among the grounds of objection made to its admission were, that the deed did not recite that the land had been advertised, or that it had been sold at public outcry, or that there was any authority to make the sale; that at the time of its execution in 1857 there was no authority to sell wild lands at private sale; that there was no recital that the sale took place on the first Tuesday in the month, or at any other time or place than that recited in its caption and date, that is to say in "Baldwin county," and on the 25th day of December, 1857. It being shown that there was in fact an order authorizing a sale of the lands of the decedent, the deed was not void for the sole reason that it did not recite the grant of such an order, however susceptible the deed may be to other grounds of objection. This deed was executed before the adoption of the original code, and its validity is to be determined by the law as it then stood. Whether the codification of certain decisions and their embodiment into the brief

formulæ of certain sections of the code as it now stands has effected any change in the law need not be considered. It was essential that the administrator should have power to make the sale which he did make. In 1857 the ordinary could not grant an order to make a private sale of land of any sort. The authority to grant an order to sell wild lands at private sale was not conferred until 1858 (Acts 1858, p. 56; Civil Code, §3448). Thus, when the deed under consideration was made, the administrator had no authority to make a private sale of lands of any description, and the ordinary could not grant him any such power. The only authority which could have been granted was to make a public sale. The rule that if an administrator has an order authorizing a sale and is apparently complying with that power, bona fide purchasers will not be affected by irregularities of which they have no notice, has reference to such matters as the mode of advertising, the length of time for which the advertisement runs, or other irregularities in the procedure, but does not mean that an administrator has authority to make any private sale of land. The deed which was made in this case did not recite that there was any public sale, or that it was made in accordance with the order of the ordinary, or give any indication that the administrator had exercised the power to make a public sale, which could have been conferred by that order alone. On the contrary it was headed, "State of Georgia, Baldwin County," and was dated December 25, 1857. There was nothing to show that the sale was made at any other time or place. It had every appearance of being a private sale by the administrator. The order of sale relied on was granted by the ordinary of Chatham county, which presumably was the county of the administration. Thus the order relied on authorized, and could authorize, only one thing, while the deed standing alone apparently consummated a different transaction. No evidence was offered to show that the land was in fact sold at public outcry. In *Clements* v. *Henderson, 4 Ga.* 148, it was held that where a party claims title to land under an administrator's deed, the authority to make the sale must be shown, and that, when this has been done, recitals in the deed of the acts required to be done by him under the statute will be considered as prima facie evidence of the truth that such acts had been done. In the opinion, Warner, J., said: "But it may be

asked, if the law presumes the administrator has done his duty, why not presume he has done so without the particular acts being recited in the deed? The deed is the muniment of title delivered to the purchaser by the administrator, as the agent of the law, and should show upon its face that the requisitions of the law have been complied with, which would divest the heirs of their title, and transfer the same to the purchaser." That case was one between an heir and a purchaser at the administrator's sale; but it would seem that if a presumption of regularity arose in favor of the administrator where the deed made no recital, it would arise as well in respect to the heir as in respect to other persons. In *Roberts* v. *Martin*, 70 *Ga.* 196, the presumption referred to was that, from an order granting leave to an administrator to sell land, the law presumed that all had been done which was necessary to be done before the same was granted. In *Nutting* v. *Thomason*, 46 *Ga.* 34, decided in 1872, the proceeding was one to recover railroad stock which had been sold by an administrator at private sale and resold by his vendee to a bona fide purchaser without notice, the stock having been transferred on the books of the company in the usual manner. It was not an effort to set up a deed by an administrator as a conveyance of perfect title. Nor does the decision in *Ardis* v. *Smith*, 52 *Ga.* 102, affect the ruling here made. There one person sought to set up in equity a contract between an administrator and another by which the latter was to pay more for the land sold at the administrator's sale than the price at which it was bid off. If there was any irregularity in the transaction, the plaintiff was not concerned with it. In *Hamilton* v. *Cargile*, 127 *Ga.* 762 (56 S. E. 1022), a will provided that the executors named therein should have full power to sell all the real estate of the testator, and to exercise their own judgment as to the manner and terms of the sale. They as executors made a deed to a purchaser. There was an apparent power to make the sale and conveyance, and it was properly admitted in evidence. What was said in the opinion in the case of *Ardis* v. *Smith*, supra, is not to be taken to mean that if an executor sells without authority, or his conveyance indicates on its face that he has not complied with his authority, such deed will convey a perfect title to the land, and that no person can raise the point of want of authority save the heirs of the estate, when the deed is

offered as a muniment of title. This case is not controlled by the ruling that in a suit by the indorsee of a promissory note against the maker thereof, the defendant can not controvert the title of the plaintiff upon the ground of an assignment by him as executor to himself as an individual. Such a sale by an executor or administrator to himself as an individual is voidable at the election of parties interested in the estate, but is not void. *Tyson* v. *Bray,* 117 *Ga.* 689 (45 S. E. 74). The plaintiff in the present case is not seeking to defend his possession of land on the ground that he was a bona fide purchaser, without notice of any irregularity, but he is seeking to recover possession of land from another, and to rely on the administrator's deed as a muniment of title. The plaintiff must recover on the strength of his own title, and not on the weakness of his adversary's. Under the facts above stated, we are of the opinion that the court erred in admitting the deed in evidence without the aid of other testimony to show that the land was sold at public sale. He also charged in effect that the plaintiff had made out a prima facie case, which would entitle him to recover if the defendant's title was forged and he was not a bona fide holder, thus declaring as matter of law the sufficiency of the administrator's deed as a muniment of title. Under the ruling above made, this was error.

It was urged that because of long lapse of time a presumption would arise in favor of the regularity of the administrator's sale. Some authorities contain general statements to this effect. 1 Gr. Ev. (16th ed.) §20. Without entering into a discussion of the general subject, one or two remarks may be made in regard to it. Mr. Greenleaf says: "The rule itself is nothing more than the principle of the statutes of limitation, expressed in a different form, and applied to other subjects." In this State the statute of limitations has been abolished with respect to suits for land, and prescription has taken its place. In *Osborne* v. *Tunis,* 25 N. J. L. 633, it is said in the opinion (on page 663) that in every case cited by Mr. Greenleaf in support of the position, it will be found that possession accompanied and followed the deed. As already stated, no possession was here shown, but the plaintiff was seeking to assert or to set up the administrator's deed as a muniment under which he claimed a perfect legal title, and on its face it indicated, not that it was made under a public sale in pursuance of

the order of the ordinary, but rather that it was a private transaction, consummated at a different time and place.

4. An objection was also made to the admission of the deed on the ground that it was recorded in Baker county, where the land originally was, after the creation of Mitchell county by act of the legislature, in which new county the land was included, and that this record was not valid. The deed was dated December 25, 1857. The act providing for the creation of Mitchell county was approved December 21, 1857. Among other things, it provided that an election should be had on the first Monday in March, 1858, at which county officers should be chosen, and that managers of the election should meet on the first day thereafter to consolidate the vote, and that the Governor should issue commissions to the officers elected, upon due certification thereof. The first Monday in March, 1858, was the first day of that month. On that very day the deed was recorded in Baker county. But under the terms of the act the organization of the new county was not complete, and could not be, at least until the next day, so that the deed could not lawfully have been recorded in Mitchell county, because at that time there was no lawful provision for making a record there. The organization of the new county was in progress, but not complete. The law does not contemplate that there shall be an interregnum during which it is impossible for necessary records to be made. It is frequently provided that certain instruments must be recorded within a limited time, and under the general law a lien or mortgage may lose its priority or right by failure to be recorded as required. The law does not contemplate that one may lose his rights because a new county is in process of organization, but has not in fact been organized. Suppose, for instance, that the very last day for recording a paper or for certifying should have fallen between the date of the act and the date of the organization of Mitchell county. There was no officer in the new county to perform the act, and if the officer in the original county could not do so, the interested party would lose his rights because there was no officer authorized to discharge the duty. Such is not the law. The recording of the deed perhaps ran a narrow race against time for validity, having taken place on the very day when the election was in progress, but it was completed before the organization of the new county, and was a lawful record.

5, 6. Certain charges of the presiding judge were assigned as error. In them he appeared to consider that good faith of the defendant would operate to make the deed valid, if it were a forgery. Thus, in one of them he instructed the jury as follows: "I charge you, gentlemen, if you believe that to be true, if you believe that the defendant has shown to you by the preponderance of the testimony in this case—if you should find that they are really forgeries, which is the first question you are to pass upon, if you find that they are forgeries, then I charge you that the burden is upon him to show that he had no knowledge of it, he had no reason to suspect, no good reasons to suspect that they were forgeries, when he bought it and went into possession under it. The burden is upon you [him] to show by the preponderance of the testimony that he took it in good faith, that he paid his money honestly believing that he was getting good title, and went into possession bona fide, in good faith, honestly, an innocent purchaser; —if he shows you that by a preponderance of the evidence, then I charge you that the title relied upon by the plaintiff would not be sufficient upon which to base a recovery for the plaintiff, and you should find for the defendant." There were also other similar charges. They apparently made the right of the plaintiff to recover turn rather upon the question of good faith and notice in the defendant than upon the strength of the plaintiff's title or the question of forgery of the deed. The question of prescription was not involved. These charges were calculated to divert the minds of the jury from the necessity on the part of the plaintiff to show a prima facie title, and to mingle that question with one of bona fides or mala fides on the part of the defendant.

*Judgment reversed. All the Justices concur.*