## DOE, et al. vs. ROE.

1. It is not necessary to the validity of a grant of land from the State of Georgia, that there should be a recital in the grant, that the Surveyor of the county, wherein the land is situated, had advertised his survey of the premises granted, according to law.

2. In an action to try the title to real estate, between parties both of whom claim title by grant from the State of Georgia, a grant will not be held involved, because it conveys to one person, more than one thousand acres of land.

3. A deed, for land, more than thirty years old, found in the proper custody, accompanying other deeds, together constituting a chain of title, and free from all suspicious appearances, is admissible in evidence without proof of execution.

4. An exemplified copy (conforming to the provisions of the Act of Congress) of a testamentary paper, executed, published, probated and recorded as a last Will and Testament, in the State of Maryland, may be a good muniment of title to real estate in Georgia, even though the Will was neither probated, nor recorded in this State.

Ejectment in Hart Superior Court. Tried before Judge THOMAS, at the September Term, 1860.

This was an action of ejectment instituted in the Superior Court of Hart county, in favor of John Doe, on the demise of Barnabas J. Dooly, executor of William Dooly, deceased, against Richard Roe, casual ejector, and William McCurley, tenant in possession, to recover a "tract of land lying in said county of Hart, on the north side of Lightwood Log Creek, containing seven hundred acres, more or less, being the tract of land granted in the year 1836, to Daniel Boatright."

Pending the action, William T. Vanduzer, administrator of Ira Christian, deceased, was regularly made co-defendant.

The action was commenced on the 26th of August, 1856.

On the trial of the case in the Court below, the following testimony was adduced, to wit:

### Evidence for the Plaintiff.

A grant for the premises in dispute, to Daniel Boatright, dated 17th December, 1836.

A deed from Boatright to William Dooly for the premises in dispute, dated 14th of November, 1840.

ANCIENT DEEDS. "A deed more than thirty years old, found in proper custody, accompanying other deeds, constituting a chain of title, and free from all suspicious appearances, is admissible in evidence, without proof of execution." Webb v. Wilcher, 33 Ga. 565 (1), 568.

"The first assignment is that the court erred in admitting the deed from Davis to Myers. It was admitted as an ancient deed. The proof was that plaintiff's attorney got it either from Mrs. Myers, the plaintiff, or from her agent, he could not remember which. We think the deed was properly admitted, it being more than thirty years old; and coming

The will of William Dooly, deceased, and letters testamentary issued to said Barnabas J. Dooly, as executor thereof.

The plaintiff also introduced several witnesses, whose testimony made out his case and then he rested.

### Evidence for the Defendant.

A copy grant (used as the original by consent) to Isaac Briggs, for five thousand three hundred acres of land, dated the 17th of January, 1787.

Counsel for plaintiff objected to this grant as evidence, because it issued for more land than the law allowed—because it did not show the name of chain carriers, and because it did not appear that the survey was advertised.

The Court overruled the objection, and admitted the grant.

The defendant also introduced the surveyor, F. B. Hodges, a plot made by him pursuant to the survey, and some other testimony applying the grant to the premises in dispute, and then the defendant rested.

The plaintiff then introduced six witnesses, whose testimony is not given in the record, and which the defendant met by the testimony of ten witnesses and several leases, and rent notes, none of which is given in the record.

The defendant introduced a deed from Isaac Briggs to Thomas Smythe, for the premises in dispute, dated 6th of March, 1793.

The defendant offered a deed from Joseph W. Patterson, Edward Patterson, and George W. Patterson to the heirs general of Ira Christian, deceased, which deed purported to have been made in the city of Baltimore, in the State of Maryland. It was signed by David Stewart and John Stewart as witnesses. David Stewart certified on the back of the deed that he was a commissioner of deeds for the State of Georgia, appointed according to law, and that Joseph W. Edward and George W. Patterson came before him, and acknowledged the execution of the deed for the purposes therein mentioned, as their voluntary act and deed. The deed was recorded 9th of September, 1857.

This deed was objected to by counsel for plaintiff, but the objection was overruled. The ground of the objection is not stated in the record.

from the proper custody. It is true that there was no possession under it, but it was executed in the presence of two witnesses, one of whom swore he saw it signed, and also that the other witness saw it signed, and being defective solely for want of proof of delivery, we think its age entitled it to go in: 31 Georgia Reports, 599; 33 Ibid. 565; 43 Ibid. 165." Thursby v. Myers, 57 Ga. 157 (1).

"The point was urged that actual possession of the land at some-

Doe et al. vs. Roe.

The defendant also offered a deed from Henry Patterson to George Patterson, conveying all the interest in the land in dispute, to which said Henry was entitled under the will of his father, William Patterson, dated the 15th of June, 1837. The deed was attested by but one witness, to wit: David Stewart. The handwriting of David Stewart was proved by the depositions of Charles F. Mayer, to which the deed was attached. The deed was objected to, on the ground that there was but one witness to it, and because the handwriting of the maker of the deed was not proved. The objection was overruled and the deed admitted.

The defendant offered in evidence, an exemplified copy of the will of William Patterson, deceased, with the probate thereof taken from the records of the proper Court in the county of Baltimore, and State of Maryland, and duly certified as an exemplification from another State. Counsel for the plaintiff objected to the exemplification, on the ground that the will had never been recorded in Georgia.

The objection was overruled, and the exemplification admitted.

The defendants then offered in evidence a deed from Thomas Smythe to William Patterson, for the land in dispute, dated the 9th of May, 1793, and attested by George Salmon and George Gould Presbury as witnesses. The deed was attached to interrogatories and exhibited to Randall H. Moale and Nathan Williams, who testified that Salmon and Presbury, the witnesses to the deed, were both dead; and that they had seen Presbury write, and knew the signature of Salmon from his being a Justice of the Peace, a merchant, and president of a bank in the city of Baltimore; that they are acquainted with the handwriting of said Salmon and Presbury, and believe their signatures to the deed to be their genuine handwriting.

The deed was objected to because the witnesses did not swear that they had ever seen Salmon write, nor did they give any other lawful means of knowing his handwriting, and because the signatures of the maker of the deed was not proven.

The Court overruled the objection and admitted the deed.

The defendant also introduced a bond for titles to the land in dispute from Thomas, agent of the Pattersons, to Christian, dated 26th of November, 1851; also a power of attorney from the Pattersons to said Thomas, and introduced two

time under, or in pursuance of the deed, **would be necessary** to admit the writing as an ancient document. **That might be so if the good appearance, the date, and the custody of the paper were all. But in this case there was more;** there was satisfactory evidence that the deed actually existed and had passed through the clerk's office more than thirty years before the trial, and there was some evidence, such as the handwriting of an attesting witness, tending to show actual execution.

other witnesses, whose testimony is not stated in the record, and then closed.

The Court charged the jury, amongst other things, "that the grant from the State of Georgia to Isaac Briggs, although it was for 5,300 acres of land, and although it did not give the names of the chain of carriers or show that the survey was ever advertised, was a good grant, and conveyed to Isaac Briggs a good title to the land embraced in it, provided the same had not been previously granted by the State."

The jury returned a verdict in favor of the defendant.

Counsel for the plaintiff then moved for a new trial of said case on the following grounds, to wit:

1. Because the Court erred in admitting the grant from the State of Georgia to Isaac Briggs, over the objection urged thereto by counsel for plaintiff.

2. Because the Court erred in admitting the deed from Patterson to the heirs of Christian.

3. Because the Court erred in admitting the deed from Henry Patterson to George Patterson.

4. Because the Court erred in admitting the exemplified copy of William Patterson's will, over the objection of plaintiff's counsel.

5. Because the Court erred in admitting the deed from Smythe to Patterson, and the evidence of Moal and Williams relative to the same.

6. Because the Court erred in charging the jury, as hereinbefore stated.

The presiding judge overruled the motion and refused the new trial, and that decision is the error alleged in the record in this case.

ROBERT MILLICAN and WASHDEN & NELENS, for the plaintiff in error.

HUNTER & AKEMAN, for the defendants in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The 1st and 6th exceptions appearing in the record before the Court depend upon the same question, viz.: the validity of the grant from the State of Georgia to Isaac Briggs. The objection to the admissibility of the document as evidence, did

Besides, it appeared that there was no adverse possession at the date of the deed, nor for nineteen years thereafter. The following authorities may be consulted on this question: 1 Kelly, 551; 8 Georgia Reports, 201 (3); 12 Ibid. 267; 13 Ibid. 523; 23 Ibid. 406; 29 Ibid. 355; 31 Ibid. 593; 33 Ibid. 565; 43 Ibid. 346 to 352; 49 Ibid. 165; 3 Phil. Ev., Cowen and Hill's notes, pp. 1310 to 1316, note 903. The admission of the deed in evidence, would not be decisive of its genuineness. The jury might

not rest upon the fact that a copy was offered. That was a matter of consent, the original being present, and probably too much mutilated for convenient use.

1. Plaintiff in error presents three. objections against the validity of the grant. First, 'that it does not appear on the face of the grant that the survey had been advertised according to law. We do not hold that a recital in the grant of the advertisement of the survey,. according to law, is necessary to its validity. The Act of the 22d February, 1785, which requires the advertisement, provides that "no grants shall be signed till the survey has been advertised by the surveyor of the county, at least three months, *after it has been recorded by the said county surveyor.*" It is directory to the surveyor and to the Governor, who is to *"sign"* grants. It is to be presumed, in reference to each grant *"signed,"* that the Governor, before signing, required evidence that the surveyor .had performed this duty. It may be questioned, moreover, whether the 2d section of the Act of 13th of February, 1786, which repeals so much of the before mentioned Act as requires the surveyor to record surveys made in his office, does not dispense also with the advertisement, which he was required to make *"after it* (the survey) *has been recorded by the surveyor, etc.* But, independently of this last view, we think the objection untenable. .

The second objection, that the names of the chain-carriers do not appear upon the plat, was waived upon the discovery that the act requiring this was passed after the date of the grant in question.

2. The second objection to the validity of the grant in question, was most .strongly -urged, and is certainly the most serious, viz.: That this grant was issued for five thousand . three hundred acres, whereas the law provides that "the quantity of land granted and sold to any one person, shall not exceed one thousand acres." It is a matter of public notoriety, that during the operation of the above restrictive clause, it was the custom of the Governors of the State, to issue grants for quantities of land larger than one thousand acres. Previous to the Act of December 24, 1836, the Governor, by authority of law, exercised not only executive power in issuing grants, but also appellate judicial power whenever, by caveat, the applicant's right to a grant was contested. These considerations suggest the probability, that

still, viewing it in the light of all the facts, think it not genuine, and find accordingly." Gardner *v.* Granniss, 57 Ga. 555-6.

"If it be necessary to prove the age of a deed by aliunde evidence, the affidavit of the witness made a few months after the deed purported to .be executed and attested by a justice .of the peace, whose official signature needs no proof, was **sufficient aliunde evidence to show its**

the practice of issuing grants for quantities exceeding one thousand acres (in seeming violation of the above quoted provision of the Act of 1783) rested upon some authoritative, contemporaneous construction of the whole law governing grants, upon head-rights and bounties. Even at this remote day, we can see reasons which may have led to such construction. It is apparent from a perusal of the numerous Acts relative to head-rights, from the year 1777 to the end of that century (see Cobb's Digest, pp. 660 to 675), inclusive, that great precision of language was not used in all cases. "Grants" and "land granted," are sometimes spoken of when the context clearly shows, that the language used is applied to cases wherein the procedure had not gone beyond the issue of a warrant, or at most the making of a·survey under it. On page 667 such tract or tracts of land as the Justices of the county "shall think fit to *grant*," are spoken of. And again, on page 660, those Justices are referred to as having "met and convened for the purpose of *granting* lands." Now, their powers never extended beyond the issue of warrants for the survey of lands, preparatory to the issue grants by the Governor, and the holding of Courts to try caveats. They never *granted* lands. It is worthy of note, also, that the first instance above cited, of the improper use of the word "grant," occurs in the same act which contains the restrictive clause here relied upon. The restriction is a proviso to the first section of the Act of 1783 (p. 665), which authorizes each male citizen to take up, free of charge (except fees) on his own account, two hundred acres, and then to purchase at a stipulated price, fifty acres for every head right in his family. It is clear, then, that the proviso was intended as a restriction upon the privilege of the citizen, not upon the granting power of the executive. It was a limitation of the number of acres for which a warrant of survey might be issued. It has been argued, that the survey must conform in quantity to the warrant, and the grant to the survey; and that, therefore, the limitation put upon the warrant, is, in effect, a limitation upon the grant. Not necessarily, as we shall see. Those warrants of survey, after having been located, and, I believe, before location, were transferable, as is recognized by the 5th section of the Act of June 7, 1777—p. 662. What, then, would prevent the transferee of several warrants located, or unlocated, to have

a consolidated survey and plat of them, and a grant in his own name, provided he adduced satisfactory evidence that the original warrants had been fairly and legally issued and transferred.

By the Act of 25th December, 1794, the Legislature prohibited the renewal of transferred warrants, and the survey of land under them, or such of them as bore date anterior to a day specified. This Act would seem to introduce a new rule to abolish the practice of consolidating grants, but it was passed subsequent to the date of the grant before us.

This precise question was considered, and decided by the Supreme Court of the United States in the case of Patterson *vs.* Wynn, 11th Wheaton, 380. We concur in the view taken in that case. This Court also, in the case of Burkhalter *vs.* Edwards, 16 Geo. 593, recognized *arguendo,* an existing practice of consolidating lands previously *granted,* and taking a new grant for the whole.

We, therefore, find no error in any ruling of the Court touching this grant.

It appears from the bill of exceptions, that the defendant in the Court below put in evidence a deed from Isaac Briggs, the grantee, to Thomas Smith, which was not objected to. He next offered, in evidence, a deed from Thomas Smith to William Patterson, dated 19th May, 1793, upon the depositions of one Moule and one Williams, showing that the subscribing witnesses to the deed were dead, and affording some evidence as to their signatures as such witnesses. Plaintiff below objected, first, because the witnesses did not testify to a knowledge of the handwriting of *both* subscribing witnesses to the deed; and, secondly, because the handwriting of the grantor was not proven. The testimony offered sufficiently proves the handwriting of one of the subscribing witnesses, if not of both. Neither witness examined testifies to having seen the subscribing witness, Sulmore, write, but both testify to their familiarity with his signature as President of a bank, and as a Justice of the Peace, and profess to know his handwriting and signature. We incline to 'think the proof of execution was sufficient to carry the deed to the jury. But we affirm the judgment of the Court, admitting this deed in evidence, on the ground that it was more than thirty years'old, and was found in the proper custody, accompanying other deeds, together constituting a chain of title.

This, in the absence of any suspicious appearances upon its face, made it admissible without proof of execution. In such a case, the law presumes everything necessary to its admission.

4. Defendant in the Court below offered, in evidence, an exemplification of the last will and testament of William Patterson, and plaintiff objected, on the ground that the will had never been admitted to probate and record in the State of Georgia. The objection was overruled, and plaintiff's counsel excepted.

This document does not appear in the brief of evidence, but in the bill of exceptions, the counsel of plaintiff in error states that it "was admitted to probate and record in the county of Baltimore, State of Maryland," and that it "was duly certified as an exemplification from another State."

Upon this statement (not having an inspection of the paper) we can not escape the conclusion that this exemplified copy would be received in evidence by the Courts of Maryland, as a muniment of title. The Act of Congress on this subject, provides that such papers "shall have such faith and credit given them in every Court within the United States, as they have, by law or usage, in the Courts of the State from whence the same are or shall be taken." Hence, it results that probate and record in Georgia, was not necessary to make this will evidence as a muniment of title to real estate in Georgia, and the objection was, therefore, not well taken.

Other deeds were offered, bringing the chain of title down to the defendant's, and objected to on divers grounds, and the judgment of the Court, overruling each objection, is excepted to.

We deem it unnecessary to consider these exceptions, because, even if we should find error in any of these rulings, we could not, for that cause, set aside the verdict and order a new trial.

The plaintiff, below, put in evidence a grant from the State of Georgia, executed in the year 1836, as the foundation of his title. It was a legitimate defence for the defendant to show title out of the plaintiff. This he did effectually, by showing that the State of Georgia had granted the same land to Isaac Briggs in the year 1787, and by adducing title from Briggs to the devisees of Patterson, bringing this chain of title regularly down to a late day, and thus rebutting all pre-

sumptions of escheat, or forfeiture of the lands by the first grantee or his assigns. The result is, that the evidence which we have adjudged, properly admitted, shows title under the older grant in the devisees of Patterson, and, therefore, shows title out of the plaintiff.

The judgment of the Court below is affirmed.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.