## SMITH, ex'r, *vs.* HULSEY *et al.*

1. Where the will of a testator who died prior to the adoption of the Code, created a general power of sale in his executors for certain purposes named, a private sale was valid, though not made until after the Code was adopted.
2. The court did not abuse its discretion in granting a new trial.

Administrators and executors. Title. New trial. Before Judge UNDERWOOD. Lumpkin Superior Court. September Term, 1878.

Reported in the decision.

W. G. BOYD; S. M. SMITH; MARLER & PERRY, for plaintiffs in error, cited, on private sale, Code, §§2567, 2569; 40 *Ga.*, 363, 370; 50 *Ib.*, 553; 58 *Ib.*, 581.

W. P. PRICE; J. N. DORSEY; C. D. PHILLIPS; H. P. BELL; McCAY & TRIPPE, for defendants, cited 1 *Ga.*, 324; 58 *Ib.*, 581.

WARNER, Chief Justice.

This was an action of ejectment brought by the plaintiff against the defendants to recover the possession of a certain tract of land therein described, and for the mesne profits thereof. On the trial of the case, the jury, under the charge of the court, found a verdict in favor of the plaintiff for the premises in dispute, and $750.00 for mesne profits. A motion was made for a new trial on the grounds therein stated, which was granted on the ground that the jury found contrary to the charge of the court as to the construction of the will of Benjamin M. Smith, deceased, under which the plaintiff claimed title to the premises in dispute. To this

judgment of the court granting the new trial the plaintiff excepted.

1. It appears from the evidence in the record that Smith, the testator, died on the 23d of October, 1858, having a short time before his death made his will, containing the following clauses, which are all that are material and pertinent to the present investigation :

"Third. I also direct that all my other property lying out of Lumpkin county, the valuation of which would be too expensive, be disposed of the same as that which may have been valued as heretofore directed; that my executors and executrix keep a correct account of all my heirs whenever so requested; and I direct that my present beloved wife, Nancy M. Smith, have the direction of the education of all my sons and daughters during her sane mind and life-time, and if she should die before my children received their education, in such case their education shall be controlled by the good judgment of my executors. I also desire that my sons and daughters receive a good English education, and if my estate be sufficient, that my sons shall receive a classical education at some good college, and that the cost of each one of my children's education be taken out of their portion of my estate ; but no charge be made against each child until after the child is thirteen years of age, for board or clothing or tuition —the property of the estate to pay the expenses until such age of thirteen.

"Fourth.          *          *          *          *

"Fifth. I also desire that my wife, Nancy M. Smith, have her election either to have one-third of my estate laid off to her or to share equally with my children, the sons and daughters of her body by her marriage with me. I also desire that my sons and daughters shall share equally—one the same as another—of my estate, which shall fall to them—a son the same as a daughter, and a daughter the same as a son, with the exception that the property that falls to my daughters I desire to go to each of my daughters and their heirs after them.

"Sixth. I also desire that no part of the real estate in Georgia be sold under thirteen years from the date of this will, unless from the want of funds for the education of the children, or other indispensable call for funds ; and if sold before that time, or any part thereof, I desire it to be sold by mutual consent of so many of the executors and executrix as may be living.

"Seventh. I also desire that so soon as my decease my perishable property shall be disposed of agreeable to the best judgment of my executors and executrix, and the proceeds thereof be applied to the payment for the education of my children, or otherwise, as they deem it expedient and proper.

"Eighth. I also desire that my children be kept together and with their mother, during their non-age, so much as circumstances will admit.

"Ninth. I also desire, as fast as my children arrive at the age of twenty-one years, that they shall have paid to them their portion of property, if they so desire, and under circumstances which, in the opinion of the executors and executrix, would be expedient. They, and each of them, may have their respective portions at an earlier period of time, and to effect this, my intention, I do hereby vest in my executors and executrix full power and authority to dispose of my real estate, as above expressed, in fee simple or otherwise, in as full and large a manner as I could myself do if living."

The testator appointed A. G. Wimpy, George Kellogg, and his wife, Nancy M. Smith, his executors and executrix —the latter now being the only acting representative of the estate, and who is the present plaintiff. It also appears from the evidence in the record, that Mrs. Nancy M. Smith, as executrix of the last will and testament of the testator, Benjamin M. Smith, deceased, on the 1st day of December, 1871, conveyed the premises in dispute by deed duly executed to Emma J. Wimpy for the consideration expressed therein of $2,000, and that on the 18th of March, 1873, the said Emma J. conveyed the premises by deed to the defendants, McMillan & Snow, for the consideration expressed therein of $5,000, and the question is, did Mrs. Smith, as the executrix of the testator, have the legal power and authority under the will to sell and dispose of the property in dispute at private sale? The general intention of the testator was, as we think, that his real estate should be kept together for the benefit of his family for at least thirteen years from the date of his will, but when any child arrived at the age of twenty-one years, he or she was entitled to have paid to him or her, his or her portion of the property; and if any child so desired, and under circumstances which in the opinion of the executors would be expedient, they, and each of them, might have their respective portions at an earlier period of time; and to effect that intention, he vested full power and authority in his executors to dispose of his real estate in fee simple, or otherwise, in as full and large a manner as he himself could have done if living. This power was created prior to the adoption of the Code, and conferred upon the testator's executors a general power

to sell his real estate as therein expressed, and that being so, they were authorized to make sale of it at private sale. *Bond & Murdock et al. vs. Zeigler et al.*, 1 *Kelly*, 324.

2. But it was insisted on the argument here, that although the executrix may have had the power under the will to make the sale of the land at private sale, still the evidence showed that the sale of the land by the executrix was fraudulent and a *devastavit*, and that the defendants, McMillan & Snow, had notice thereof, and therefore the new trial should not have been granted for that reason. In looking through the evidence in the record we are unable to discover any fraud in the sale of the land by the executrix to Mrs. Wimpy, or of a *devastavit*. Mrs. Wimpy testifies that there was no fraud in the sale of the land, but on the contrary it was made for the protection of those who were interested in the estate. Stephens also testified to the same effect. If there was no fraud in the sale of the land by the executrix, as a matter of course McMillan & Snow could not have had notice of that which had no existence when they purchased the land. As to the *devastavit*, Mrs. Wimpy had the land with which to pay the purchase money therefor, from which was to be deducted her share as one of the legatees under the will, and the $800.00 which she had paid to Van Dyke for the benefit of the estate. If Mrs. Wimpy had collected the proceeds of the sale of the land sold to McMillan & Snow, and applied it to the payment of what was due from her for the land, instead of appropriating the same to the payment of the debts of her husband, there would have been no difficulty as to her ability to pay for the land purchased from the executrix. In view of the evidence contained in the record there was no error in granting the new trial.

Let the judgment of the court below be affirmed.