## BOOTH *v.* YOUNG.

1. An administrator can not lawfully sell property held adversely to the estate by a third person, and a deed made by an administrator to land when the same is held adversely to the estate by a third person is void.

2. An administrator, in his individual capacity, and at private sale, granted "a turpentine lease on all turpentine timbers," for a stated term of years, on certain described lands, with the right to the lessee "to have and to hold said leased lands for said purposes." The lessee entered under the lease, and cut and boxed the timber. A sale of the land by the administrator, without reservation of the turpentine rights, made while the lessee was in the actual and open possession of the timber, working it for turpentine purposes, was invalid; and a deed executed by the administrator to the purchaser in pursuance of such sale was void in so far as it purported to convey title to the turpentine timber.

No. 1048. July 19, 1919.

Petition for injunction. Before Judge Summerall. Ware superior court. May 29, 1918.

*Parks & Reed,* for plaintiff.

*Parker & Parker,* for defendant.

George, J. In June, 1916, D. C. Corbett was appointed administrator of his wife's estate, which included a certain tract of

land, of which Mrs. Corbett had been in possession for many years under a recorded deed. The land was appraised with the other property of the estate; and in August, 1916, the administrator filed an application to sell it for the purpose of paying the debts of the estate and making distribution to the heirs at law. There were nine heirs, including D. C. Corbett himself. Part of the land in question had been in cultivation as a farm for many years with buildings, fences, and fields, and was rented by the administrator to tenants who occupied the buildings and cultivated the open land in 1916 and 1917. In December Corbett leased to Young, the defendant in error, the turpentine privilege in the pine timber on the land by a lease made privately and executed by him as an individual. Young recorded the lease, and commenced to work the timber under it. In March, 1917, after proper advertisement, the land was sold by the administrator, and was purchased by W. S. Booth, plaintiff in error. There was no reservation or exception of the turpentine privilege in the sale by the administrator. Young was actually working the timber for turpentine purposes at the time of the sale to Booth, and the latter had actual knowledge of the execution and existence of the lease. Booth brought suit against Young, to enjoin him from working the timber, and on the interlocutory hearing the judge denied the injunction.

That Corbett's lease to Young was void as against the estate is beyond question. *Sapp* v. *Cline,* 131 *Ga.* 433, 436 (62 S. E. 529); *Haden* v. *Sims,* 127 *Ga.* 717, 719 (56 S. E. 989). The controlling question, therefore, is whether the sale by the administrator is valid and passed title to Booth to the land and timber growing thereon. If it is, the lease to Young being absolutely void, the turpentine privilege went with the land, and Booth was entitled to an injunction under the evidence submitted upon the hearing. Section 4185 of the Civil Code declares that "A deed to lands, made while the same are held adversely to the maker of the deed, is not void." That section is the result of legislative enactment (Acts 1859, p. 24); and it abolished the common-law rule making void all conveyances of land at the time in the adverse possession of another. *Chapman* v. *Floyd,* 68 *Ga.* 455 (3). The common-law rule, as a special rule applicable to administrator's sales, has, however, been preserved in this State. Section 4033 of the code

declares that "An administrator can not sell property held adversely to the estate by a third person; he must first recover possession." A deed made by an administrator to land when the same is held adversely to the estate by a third person is void. *Heard* v. *Phillips,* 101 *Ga.* 691 (31 S. E. 216, 44 L. R. A. 369) ; *Hanesley* v. *Bagley,* 109 *Ga.* 346 (34 S. E. 584). While section 4033 is an exception to the general rule of force in this State since the act of 1859, the exception itself is a survival of the common-law rule of force in this State prior to the act of 1859. *Downing Lumber Co.* v. *Medlin,* 136 *Ga.* 665, 666 (72 S. E. 22) ; *Tucker* v. *McArthur,* 103 *Ga.* 409, 416 (30 S. E. 283). Under the common-law rule, a deed to land executed while the same was held in adverse possession by a third person was void for champerty. The object of the provision contained in section 4033 of the Civil Code "is to prevent the administrator from sacrificing the value of the property by putting it up for sale under such circumstances that the purchaser would buy a lawsuit along with the land. The law deems it more expedient that the administrator should first end the lawsuit himself, and then sell for full value." Powell on Actions for Land, § 249; *Downing Lumber Co.* v. *Medlin,* supra. Standing timber is realty. *Corbin* v. *Durden,* 126 *Ga.* 429 (55 S. E. 30). And if not reserved, it passes with the conveyance of the land. *Sirmans* v. *Milltown Lumber Co.,* 130 *Ga.* 82 (60 S. E. 267). The working of timber for turpentine is an act of such a nature that it may amount to adverse possession. *Royal* v. *Lisle,* 15 *Ga.* 545 (60 Am. D. 712) ; *Flannery* v. *Hightower,* 97 *Ga.* 592 (3), 605 (25 S. E. 371) ; *Roberson* v. *Downing Co.,* 126 *Ga.* 175, 177 (54 S. E. 1020). The possession of the grantee is generally, if not always, adverse to the grantor; likewise, the possession of a lessee of growing timber, while subordinate to the lessor's title to the land, is nevertheless adverse to the lessor's title to the timber. In view of the foregoing well-established principles, Young's possession of the timber was adverse to the estate. He did not question the estate's title to the land, nor to the trees growing upon the land. He did assert the right to work the timber under his lease for the purpose of extracting turpentine and resin therefrom. Had he claimed title to the land itself, his possession might have ripened into a prescriptive title under our code. The reason of the rule contained in section 4033, supra, applies with full force in this

case. There is evidence in the record to authorize the finding that the purchaser of the land would have given more for it if Young had not been in possession of the timber under the lease executed by Corbett. The fact that Young's lease was void as against the estate is immaterial. The fact that he claimed the right to possess and work the timber for turpentine purposes—a valuable right, and one affecting the market value of the realty itself, coupled with the fact that he was in the adverse possession of the timber actually working it for turpentine purposes at the time of the sale by the administrator, under the lease from Corbett, is the controlling consideration. The administrator could not make a valid conveyance of the timber so long as the same was thus held adversely to him by Young. *Guthrie* v. *Bullock,* 143 *Ga.* 17 (84 S. E. 59). See also *Paschal* v. *Davis,* 3 *Ga.* 256 (3), where it was said: "Where an administratrix, in her individual capacity, sold a negro belonging to the estate of an intestate, and delivered possession thereof to the purchaser, *held,* that the possession of the purchaser was adverse to the title of the legal representative of the intestate's estate."

The argument on behalf of the plaintiff in error is impressive, and may be summarized as follows: The lease to Young, if valid, conveyed no legal estate or interest in the land, and, being invalid, is no more than color of title to an easement or license; the words "held adversely" in section 4033 of the Civil Code imply actual, adverse, and exclusive possession; there can be no such thing as adverse possession of a mere right to work the trees for turpentine; neither ejectment nor other form of real action will lie to "recover possession" of such right; and in no event is Young's possession adverse to the estate, because under and subordinate to the title of the administrator. As we have indicated, however, the lessee is not a mere tenant, with the right to use the land and to appropriate its annual yield to himself. His right, under the lease, if valid, would include not merely the right of occupancy, but the right to take from the land something which would permanently decrease its market value. While for many purposes his lease may amount to no more than a mere license, nevertheless it granted to Young a "turpentine lease on all turpentine timbers" for a term specified, on lands described, with the right "to have and to hold said leased lands for said purposes,"

etc. Whatever his right may have been, his possession was actual, and, as we have seen, adverse to the estate. While the administrator is not bound to quiet every adverse claim to the land before he can bring it to sale, he must be in position at the time of the sale to deliver the actual possession of it to the purchaser. So long as the adverse possession of another makes it impossible for the administrator to put the purchaser in actual passession, loss to the estate must result. We do not hold that the deed from the administrator to the plaintiff in error is altogether void. Whether it will operate, under the circumstances of the case, as a good conveyance of title to land we do not decide. The decision is expressly limited to a holding that the deed to the growing timber, under the circumstances of the case, is void; and that since the plaintiff in error did not show title to the timber he was not entitled to the injunction prayed.

*Judgment affirmed. All the Justices concur.*