## CHATTANOOGA IRON & COAL CORPORATION *v.*
## SHAW *et al.*

1. As the trial resulted in a verdict in favor of the plaintiffs, and as the defendant moved for a new trial on the ground, among others, that the verdict is contrary to the evidence, the questions raised by the refusal of the judge to grant a nonsuit can be more fully and properly considered in disposing of the grounds of the motion for new trial.

2. A certified copy of a will, executed in the State of Tennessee, witnessed according to the laws of this State, and duly probated in the State of Tennessee, is admissible as a muniment of title to lands in this State, in an action of trespass brought by plaintiffs who claim under a purchaser by deed from the executors of such will, made in pursuance of a power of sale contained therein, without the probate of the will in this State, when accompanied by an exemplification of the record admitting the will to probate in the State of Tennessee, certified according to the act of Congress, when such will is recorded in the book in which deeds are recorded in the office of the clerk of the superior court of the county in which the land is located.

3. A warranty deed executed to lands in this State by the executors of such will as parties of the first part and to the grantee therein as party of the second part, which does not recite that the sale was at public outcry after due advertisement, and where there is no proof submitted that the property thereby conveyed was advertised and sold by the executors at public outcry, will be deemed and held to have been made in pursuance of a private sale.

(a) Where the testator devised the residuum of his estate in trust to his executors for the purpose of preserving it, for collecting the income therefrom for a period of five years from the date of the probate of his will, and for applying such income as therein directed, and provided that his executors "shall have power to sell any or all of the property of said trust estate, and to reinvest the proceeds of any such sale in such other safe and suitable form as shall seem best to them," his executors, acting as trustees of the property so devised to them in trust, were authorized to sell any or all of such property at private sale; the method of sale, as well as the manner of reinvestment, being left to the discretion of his executors.

4. A sale by the executors of property so devised to them in trust, and a conveyance thereof to a purchaser, were not void because such property was held adversely to such trust estate at the time such sale was made.

(a) The principle embraced in section 4033 of the Civil Code of 1910, even if applicable to sales by executors (which is not decided), will not be extended to a sale by executors to whom the testator devises property in trust with authority to sell the same, and in effecting which such executors act as trustees.

5. The other assignments of error are without merit.

No. 3989.   APRIL 16, 1924.

Damages. Before Judge Wright. Walker superior court. December 1, 1922.

F. M. Shaw and C. J. Evitt, the latter as administrator of the estate of W. C. Evitt, deceased, brought suit on July 25, 1921, against the Chattanooga Iron & Coal Corporation, to recover damages for the mining and removing of iron ore from certain described lands to the ores on which they claimed title, and for damages from the improper and negligent mining of said ores. They alleged, that from March 27, 1918, Shaw and W. C. Evitt have been tenants in common and owners of the iron ores, mining privileges and rights in said lands, on which there are large and valuable deposits of iron ore; that, beginning about March 27, 1918, said company unlawfully entered upon said lands and began to mine and remove therefrom ore, and until about September, 1922, did mine and remove therefrom ore of the value of $6250; and that by the negligent manner in which the ore was mined the ore deposits in said lands have been rendered less valuable in the sum of $3000. They attached to their petition an abstract of title consisting of a warranty deed from John Dickerson and Augustus B. Culberson to Henry Hise, dated December 6, 1859, recorded December 16, 1859, conveying lot No. 287 in the twelfth district, fourth section of Walker County, Georgia; a deed from Henry Hise to H. S. Chamberlain, dated May 24, 1882, recorded Feb. 7, 1887, conveying the iron ore on the west half of lot No. 287 and the northwest 40 acres of lot No. 290 of said district and section; a warranty deed from H. S. Chamberlain to the Chickamauga Iron Company, dated June 20, 1890, recorded January 15, 1892, conveying the above mineral interests; a warranty deed from the Chickamauga Iron Company to H. S. Chamberlain, dated June 13, 1910, recorded June 14, 1910, conveying the above mining interests; the last will and testament of H. S. Chamberlain, late of Chattanooga, Hamilton County, Tennessee, dated November 8, 1912, probated at the March term, 1916, of the county court of Hamilton County, Tennessee, and recorded in the book of wills of said county, in which Morrow Chamberlain and H. S. Chamberlain Jr. were appointed executors; a warranty deed from Morrow Chamberlain and H. S. Chamberlain Jr., as such executors, to W. C. Evitt, dated October 24, 1917, and recorded March 30, 1918, conveying the above mining interests; and a warranty deed from W. C. Evitt to F. M. Shaw, dated March 27, 1918, recorded April 2, 1918, conveying an undivided half interest in the above mining rights. They further

alleged, that they and the defendant claim title under Henry Hise as a common grantor; that the defendant held under a deed from W. W. S. Myers, administrator of Henry Hise, deceased, to H. P. Lumpkin, dated April 2, 1898, a quitclaim deed from Saphronis Hise to H. P. Lumpkin, dated April 5, 1898, purporting to convey the lands willed by said Henry Hise to Saphronis Hise, and by subsequent mesne conveyances; that on January 28, 1919, F. M. Shaw and W. C. Evitt filed in Walker superior court their petition against defendant, to recover damages in the matter hereinbefore set out; that after the death of W. C. Evitt, C. J. Evitt, as his administrator, was, on May 31, 1920, regularly made a party plaintiff in lieu of his intestate; and that on March 7, 1921, petitioners dismissed said suit and have since paid the costs therein, and now within six months renew their suit.

In its answer to the petition of the plaintiffs the Chattanooga Iron and Coal Corporation denied the substantial allegations thereof, except it admitted that on January 28, 1919, F. M. Shaw and W. C. Evitt filed a petition seeking damages of the defendant for alleged trespasses on the lands described, and that C. J. Evitt was subsequently made a party in said proceeding. The defendant further alleged, that on March 1, 1911, Spencer S. Marsh, by warranty deed, conveyed to C. E. Buek all the iron ore and mining rights in the premises in dispute; that in 1913 C. E. Buek conveyed said ore and mining rights to defendant, who then went into possession of the same and has continued to mine ore from said lands; and that the defendant and those under whom it claims have acquired a good title by prescription to the premises in dispute.

On the trial of the case the appointment of C. J. Evitt as administrator of the estate of W. C. Evitt was admitted by defendant, without proof. Plaintiffs introduced in evidence the deeds set out in the abstract of title attached to their petition, and a copy of the proceedings probating the last will of H. S. Chamberlain in the county court of Hamilton County, Tennessee, together with a copy of the will, certified under the act of Congress, and recorded in the office of the clerk of the superior court of Walker County, Georgia, on February 28, 1922, these proceedings consisting of the petition of Morrow Chamberlain and H. Sanborn Chamberlain for the probate of the will of H. S. Chamberlain and for letters testamen-

tary, and the order of the court admitting said will to probate, and reciting that the executors duly qualified, and that letters testamentary were issued to them. The pertinent provisions of said will are as follows: "All the rest and residue of my estate of which I may die seized and possessed, of whatever kind and description and wheresoever situated, I devise in trust to my executors hereinafter named, for the following purpose, viz.: My said executors and trustees shall preserve said property and collect the income, interest, dividends and profits therefrom for a period of five years from the date of the probate of this my will. Said executors shall have the power to vote the stocks belonging to said trust estate, at any and all meetings of the corporations issuing said stock. The said executors shall have power to sell any or all of the property of said trust estate, and to reinvest the proceeds of any such sale, in such other safe and suitable form as shall seem best to them."

The deed from the executors of H. S. Chamberlain, deceased, to William C. Evitt was dated October 24, 1917, and recorded March 30, 1918, and conveyed the premises in dispute for an alleged consideration of $100, this conveyance being a warranty deed between "Morrow Chamberlain and H. S. Chamberlain Jr., executors of the estate of H. S. Chamberlain, deceased, parties of the first part, and W. C. Evitt, party of the second part," without recitals that the executors conveyed the property in dispute as a part of the estate of H. S. Chamberlain, and that the sale was at public outcry. Plaintiffs introduced evidence tending to show that Henry Hise died in possession of the premises in dispute, and had been in possession fifteen or twenty years prior to his death; that his wife remained in possession thereof after his death; that defendant had mined from said premises 12,000 tons of iron ore of the value of 50 cents per ton; and that the defendant had injured their mining interest to the extent of $3000 by its negligent mining and removing of ores from said premises.

T. J. Gravitt for plaintiffs testified (in part) : I know where the property is, and stripped most of it. I don't know just when the work of mining began, but it went on for two or three years, I think. My best recollection is that it began about 1918 or 1919. I don't know how long they were mining on Mr. Shaw's property —I think about two years. I don't know whether any mining began prior to 1917.

W. T. Franklin, for plaintiffs, testified: I don't remember when work commenced; about 1917, I guess. There had been a whole lot of work done when I went there to work. After March, 1918, I have no idea how much ore was removed from that property; something around 1000 tons, I guess.

Plaintiffs introduced in evidence a deed from W. W. S. Myers, administrator with will annexed of the estate of Henry Hise, deceased, to H. P. Lumpkin, conveying lot No. 287 in the twelfth district, fourth section of Walker County, Georgia, and 60 acres of lot No. 290 thereof, recorded July 15, 1898; a certified copy of the deed from Saphrona Hise to H. P. Lumpkin, dated April 5, 1898, recorded April 11, 1906, and conveying 100 acres, more or less, of lot No. 287, and 60 acres, more or less, of lot No. 290, in the above district and section of Walker County, Georgia, it being all of said lots owned by Henry Hise during his lifetime, and being the land willed by Henry Hise to Saphrona Hise; and a certified copy of deed from H. P. Lumpkin to Spencer Marsh, dated April 6, 1898, conveying all the iron ores upon said 100 acres of lot No. 287 and 60 acres, more or less, of lot No. 290, recorded June 6, 1903.

It was admitted by counsel for defendant that they had been served with notice to produce the originals of said certified copies of said deeds, and that the original deeds were not in defendant's possession.

Plaintiff Shaw testified that the deed from the administrators of Henry Hise to H. P. Lumpkin, the deed from Lumpkin to Spencer S. Marsh, and the deed from Marsh to Buek had never been in his possession or control, and he did not know where they were; that Lumpkin resided in Walker County, Georgia, during his lifetime; that the widow of Marsh is still living; that he had made no effort to find out where the deed to Marsh was; that he knew Myers during his lifetime, but cannot say whether he died before or after the suit was begun; that he had never made any inquiry of him as to whether he had any of these deeds; and that he made no effort to ascertain whether there was an administrator upon his estate; that Myers is dead, Lumpkin has been dead for some time, and Marsh lives in Tennessee. Plaintiffs introduced evidence, as to the amount and value of the ore mined, which would authorize the verdict.

The defendant introduced in evidence the deed from Spencer S. Marsh to C. E. Buek, dated March 1, 1911, embracing the premises in dispute; the deed from Buek to the Chattanooga Iron & Coal Corporation, dated January 1, 1913, conveying the premises in dispute; and a recorded bond for title from Marsh to Buek, conditioned to convey the iron interest in 110 acres of lot 287 and 60 acres of lot 290 in said district and section of Walker County, Georgia, dated September, 1906. Also testimony tending to show that the value of the hard ore in question was 7-1/2 cents per ton, and of the soft coal, 12-1/2 cents per ton.

S. F. Evans, for defendant, testified, among other things, as follows: I was employed by defendant as superintendent from 1912 to 1920. We worked up to 1917 from 1915. In 1915 when we began operation again we built our track on 287 and went to mining. In order to mine 287 and the west half of 290, we made tunnels, tipples, tram-tracks and railroad-tracks, and did the things necessary to mine. Continued to mine this particular portion of land now in dispute on up to 1917, and shipped it to the furnace of the defendant company. The defendant company closed down in 1916, and started up some time in around 1917 and mined until some time in 1918, and closed down again until the spring of 1920. I believe we closed down in the spring of 1919. There was no way of telling how much ore was taken off of the property since March 27, 1918, so as to distinguish it from what was taken before that date. I would not think that the ore mined was over 7500 or 8000 tons on the entire property. On October 24, 1917, I was actually mining on 287 and 290; had been prior to that time, and had tracks, tipples, and entries thereon. During the time I was operating on 287 and 290, and prior to October, 1917, I think Mr. Frank Shaw knew I was operating this part of the property. He had some interest down there, and he went down with me frequently on the engine and walked from this property to his property.

C. O. Dietz, for defendant, testified: During 1917, 1918, and 1919 I was employed by the defendant corporation. I was engineer for them in 1917 and 1918. I am familiar with the premises in dispute. From my actual survey, 9558 tons of ore had been mined altogether from these lands. Since December 8, 1918, approximately 6785 tons have been taken off. Previously to October 27,

1917, 445 tons were mined. From October 24, 1917, to March 25, 1918, 3638 tons were mined. I am not certain as to that mined previous to October 24, 1917, whether that covered the entire mining operation that had been done at that place for all the periods previous to that time. I know that mining operations have actually been carried on since the fall of 1918. I found that 16,343 tons of ore have been removed from the west half of lot 287 and northwest half of 290. Prior to October, 1917, the date Mr. Evitt purchased this property, 445 tons had been removed to the best of my knowledge. From October, 1917, the date Mr. Evitt purchased, to March 25, 1918, the date Mr. Shaw became interested in the property, 3638 tons were mined; and from March 25, 1918, to November, 1918, there had been 5475 tons mined.

The other evidence for the defendant is unnecessary to an understanding of the points raised in this record.

At the conclusion of the evidence for the plaintiffs, the defendant moved for a nonsuit on the grounds: (1) that this evidence showed that the will of H. S. Chamberlain Sr., relied on by plaintiffs as a muniment of title, had not been probated in the State of Georgia, and in the absence of such probate could not be offered as a muniment of title; (2) that the evidence introduced on behalf of plaintiffs disclosed beyond question that the property sought to be conveyed to W. C. Evitt by the executors of the estate of H. S. Chamberlain, upon which the trespass of the defendant is alleged to have occurred, was held adversely by the defendant at the time of the alleged conveyance from said executors to said Evitt, for which reason said executors could not make a valid title to said lands, but should have first recovered possession before conveying the same; and (3) the evidence offered by plaintiffs was insufficient to authorize a recovery. The court overruled the motion for nonsuit, and the defendant excepted.

The jury returned a verdict in favor of the plaintiffs. The defendant moved for a new trial on the general grounds, and afterwards, by amendment, added the following grounds:

1. Because the court erred in admitting in evidence, over objection of counsel for defendant, the proceedings to probate the will of H. S. Chamberlain, and copy of the will, on the grounds, (1) that no letters testamentary accompanied said record; and (2) that a foreign will probated in a foreign State cannot be offered as a

muniment of title in this State, where the plaintiffs are seeking to recover by reason of a conveyance by the executors of H. S. Chamberlain to one of them and a subsequent conveyance of an interest in the property in dispute by one of the plaintiffs to another of the plaintiffs, and not through any title that passed into the beneficiaries under the terms of the will.

2. Because the court admitted in evidence the deed from the executors of H. S. Chamberlain, deceased, to W. C. Evitt, over objection on the ground that the deed did not contain any recital of an undertaking by the grantors to convey the property therein embraced as a part of the estate of H. S. Chamberlain.

3. Because the court erred in admitting in evidence the certified copies of the deeds from Saphronis Hise to H. P. Lumpkin, and from H. P. Lumpkin to Spencer S. Marsh, over objection on the ground that they were not admissible in lieu of the original deeds, because no sufficient foundation had been laid for introduction of the copies. The court overruled the motion for new trial, and error was assigned on this judgment.

*A. W. Chambliss, R. M. W. Glenn, Norman Shattuck,* and *Rosser & Shaw,* for plaintiff in error.

*G. E. Maddox* and *Henry & Jackson,* contra.

HINES, J. (After stating the foregoing facts.)

1. As a verdict was rendered in favor of the plaintiffs, and as the defendant moved for a new trial on the ground that the verdict was contrary to the evidence, we will not consider the refusal of the judge to grant a nonsuit; but we will deal with the questions raised by the motion for a nonsuit in disposing of the grounds of the motion for new trial.

2. In order for the plaintiffs to recover, it was necessary for them to show that they owned the iron ore in the lands in suit. Plaintiffs derived title to this ore through the will of H. S. Chamberlain Sr., who resided at the time of his death in the State of Tennessee, and who died leaving a will which disposed of the mineral interests in these lands. The will was duly probated in the county court of Hamilton County, Tennessee, on March 22, 1916. It was never probated in this State. It was executed and witnessed according to the laws of this State. The plaintiffs offered in evidence a copy of the will and an exemplification of the record admitting it to probate in Tennessee, certified according to the act of

Congress. The will and the record probating it had been filed and recorded in the office of the clerk of the superior court of Walker County on February 28, 1922. To the introduction of the copy of the will and exemplification of the record probating it in Tennessee the defendant objected on the grounds, (1) that no letters testamentary accompanied the record; and (2) that the will had not been probated in this State. The court overruled these objections and admitted said evidence.

Was the probate of this will in this State necessary to constitute it a muniment of title on which plaintiffs could rely in making out their case? In *Doe* v. *Roe,* 31 *Ga.* 593, this court held that an exemplified copy, certified according to the act of Congress, of a testamentary paper executed, published, probated and recorded as a will in another State, may be a good muniment of title to lands in this State, even though the will was neither probated nor recorded in this State. In *Kerr* v. *White,* 52 *Ga.* 362, this court said: "An executor to a will made and probated in Tennessee may assent to a devise of real estate situated in this State, without probate of the will here." It was further said: "If Mr. Kerr might own real estate here, he might convey it or devise it to Mr. White, in fee or in trust, provided he did it according to the laws of this State. That the deed or will has a trust attached does not alter the matter. Was the title complete to Mr. White according to the laws of Georgia? The law of Tennessee has nothing to do with it; they could not make it good if it was bad—they cannot make it bad if it be good. If, by our law, White takes without conditions, the law of Tennessee cannot impose a condition. The land passes according to our law, and this is the necessary incident to the sovereignty of the State over the land within its borders. The question therefore is whether, under our law, Mr. White is, under the will of Mr. Kerr, entitled to the title and possession of the land referred to; and that depends, as we have said, entirely on our law. To make out the case it is to be shown that the will is executed according to the laws of Georgia. This is admitted. Its probate in Tennessee makes it a good muniment of title in this State, under the constitution of the United States, providing for full faith to the judgments of the judicial proceedings of other States: 31 Georgia, 600." It will thus be seen that this court cited *Doe* v. *Roe,* supra, as an authority for its holding. In *Chidsey* v. *Brookes,* 130 *Ga.* 218 (60 S. E. 529,

14 Ann. Cas. 975), the ruling in *Doe* v. *Roe* was formally overruled by this court. In so doing this court did not refer to the case of *Kerr* v. *White,* which followed said ruling in *Doe* v. *Roe;* but as *Kerr* v. *White* was based on *Doe* v. *Roe,* the effect of overruling the principle announced in the older case would probably have the effect of overruling the principle announced in the latter case. It would seem that removing the foundation of the latter case would have the effect of destroying the superstructure built thereon. It is not necessary however, for us to decide this question.

The case of *Chidsey* v. *Brookes* was decided on February 26, 1908. Titles to lands in this State had been acquired on the faith of rulings in 31 and 52 Georgia Reports. The effect of the ruling in *Chidsey* v. *Brookes* was to unsettle such titles. For this reason the legislature passed the act approved August 17, 1908, entitled "An act to quiet the title to real estate in Georgia held under foreign wills, and to make such wills muniments of title in certain cases, and for other purposes." This act is now codified in the Code of 1910, §§ 3881, 3882. Section 3881 makes wills executed in another State and witnessed according to the laws of Georgia, when probated in another State, "muniments of title for the transfer and conveyance of real property in this State to the distributees or devisees mentioned in such wills, and the same shall be admitted in evidence in this State as such muniment of title, without being probated in this State, when accompanied by an exemplification of the record admitting the will to probate in another State, certified according to the act of Congress," when such wills are recorded in the deed books in the offices of the clerks of the superior courts of the counties in which the lands are situated. The provisions of this section are plain. Under these provisions devisees to whom lands are devised under foreign wills acquire title to such lands, when assented to by the executors of such wills, without their probate in this State; and copies of such wills, when witnessed according to the laws of this State and accompanied by an exemplification of the record probating such wills, certified according to the act of Congress and duly recorded, are muniments of title to the lands so devised.

But can executors of a foreign will which has not been probated in this State sell and convey lands of the testator located in this State? This depends upon the proper construction of section 3882

of the Civil Code of 1910. This section is in part as follows: "The preceding section shall apply to all cases where real estate is held or claimed under foreign wills, and to all suits which shall be brought to recover or protect real property in this State." This section is of broader purpose and wider intent than the preceding section. It makes the preceding section applicable to all cases where real estate is held under foreign wills, and to all suits which shall be brought to recover or to protect lands in this State. To hold that the cases referred to in section 3882 are the cases mentioned in section 3881 would place too strict and narrow a construction upon these sections. Such a cramped construction of the act of 1908 would render the second section of that act, now embraced in section 3882, superfluous and unnecessary; and we should not adopt a construction which would place the legislature in the position of enacting unnecessary and superfluous provisions. The better construction of the last section cited is that it applies to all cases where real estate is held or claimed under foreign wills, whether such claimants are devisees or distributees under such wills or are other claimants thereunder; and that the suits therein referred to are not only suits brought by such devisees or distributees to recover or protect lands in this State devised to them in such wills, but also suits brought by others, such as purchasers from the executors under such wills, to recover or protect lands in this State so purchased. So we are of the opinion that purchasers of lands under foreign wills, when sold by executors empowered by such instruments to sell them and when such lands are sold in the proper manner, acquire title thereto, although such wills had not been probated in this State.

3. The plaintiffs introduced in evidence, as one of their muniments of title, a deed from the executors of H. S. Chamberlain Sr., deceased, to W. C. Evitt, dated October 24, 1917, which conveyed the premises in dispute, for the alleged consideration of $100. This conveyance was in the form of a warranty deed, and recited that it was made between "Morrow Chamberlain and H. S. Chamberlain Jr., executors of the estate of H. S. Chamberlain, deceased, parties of the first part, and W. C. Evitt, party of the second part." This instrument did not recite that the executors conveyed this property as a part of the estate of H. S. Chamberlain, the deceased, nor that the sale was at public outcry after due advertisement. Plaintiffs

submitted no proof that this property was advertised and sold by the executors at public outcry. The defendant insists that the sale by the executors was a private one, and that for this reason no title passed under this conveyance to the grantee therein. Was this a private sale by the executors of these lands or the mineral interests therein; and if so, was the sale invalid?

Where the deed of executors makes no reference to the power of sale in the will under which they are selling, contains no recital as to any public sale or the manner of the sale, but purports to be a mere conveyance of the property to the grantee therein, and there is no aliunde proof of a public sale, the sale will be deemed and held to have been a private sale. *Sapp* v. *Cline,* 131 *Ga.* 433 (62 S. E. 529). So as this deed from the executors to Evitt contains no recital as to any public sale or the manner of the sale, and seems to be a mere conveyance of the property to the grantee therein, and as there is no aliunde proof that the sale was public, we hold that this sale was a private one. The testator devised the residuum of his estate to his executors in trust for certain purposes. We assume, as it is so treated by the parties, although this fact does not clearly appear from the record, that this residuum embraced the property in dispute. The will contains this provision: "The said executors shall have power to sell any or all of the property of said trust estate, and to reinvest the proceeds of any such sale, in such other safe and suitable form as shall seem best to them." Did this power authorize the executors to make a private sale of the property in dispute? It does not expressly authorize a private sale. Does it do so by necessary implication? In *Mattox* v. *Eberhart,* 38 *Ga.* 581, the testator directed that all his property be kept together during the widowhood of his wife for the support and maintenance of his wife and minor children, and that his executors give to each of his sons as they became of age, and to each of his daughters as they became of age or married, certain amounts in money or property, as might be most convenient to the estate and most suitable to the child receiving the property; "and in order to enable my executors more conveniently to carry out all the foregoing objects of this item, I hereby give them power to sell any of my property and to buy or to exchange for other property, taking care to give a full statement and history of all such sales, purchases and exchanges in their return to the court of ordinary." Under this power this court

held that the executors were authorized to sell at a private sale. In *Anderson* v. *Holland,* 83 *Ga.* 330 (9 S. E. 670), this court said: "It seems to us that the will does not fail to specify the mode of sale, but by necessary implication authorizes a private sale. It describes the land as owned in partnership, and gives authority to exercise discretion by selling the testator's half, or buying the other half, or by dividing the lot or selling it altogether. The selling was to be done, we think, in the same mode as the buying or the dividing; and certainly these were not contemplated to be done at public outcry or with any preliminary in the nature of advertisement." Under the will in the instant case, the testator devises the residuum of his estate in trust to his executors for the purpose of preserving it, for collecting the income, interest, dividends, and profits therefrom for a period of five years from the date of the probate of the will, and applying the same as therein directed. He then provides that his executors "shall have power to sell any or all of the property of said trust estate, and to reinvest the proceeds of any such sale, in such other safe and suitable form as shall seem best to them." The discretion vested in his executors under this provision is not to be construed as applying solely to the reinvestment of the proceeds of the sale of any of the property, but should be held to apply to the method of sale as well. The method of sale, as well as the manner of reinvestment, is a matter left to the discretion of his executors. This being so, we are of the opinion that the intention of the testator was to authorize his executors to sell at private sale any of the property mentioned; and, as we have seen above, this property embraced the property in dispute.

This being so, was the sale of the property in dispute invalid and void? Prior to the adoption of the Code, the executor had the right to sell the lands of the testator at private sale when the will authorized a sale without prescribing how it should be made. *Bond* v. *Zeigler,* 1 *Ga.* 324 (44 Am. D. 656); *Mattox* v. *Eberhart,* supra; *Smith* v. *Hulsey,* 62 *Ga.* 341; *Thurmond* v. *Failh,* 69 *Ga.* 832. Since adoption of the Code, the executor cannot sell lands of his testator at private sale unless authorized so to do, either expressly or by necessary implication. *Sapp* v. *Cline,* supra; Civil Code (1910), § 4036. This section expressly declares that "the executor . . must comply with the requisitions before specified." These "requisitions" refer to advertising the sale and making a public sale.

*Anderson* v. *Holland,* and *Sapp* v. *Cline,* supra. Thus a private sale by an executor, when unauthorized by the will, is invalid and void; and a deed made in pursuance of such sale, when offered in evidence to establish title, can be attacked by the party against whom such title is sought to be asserted. But, as we have seen, the will by necessary implication authorized a private sale; and this being so, the sale by the executors under this power of sale, and their deed in pursuance thereof, vested the title to the property in dispute in the grantee in this deed.

4. But it is insisted that the sale by the executors of this property was void, for the reason that at the time of the sale it was held adversely to the estate of testator. Conceding that this property was so held, we do not think that this position is tenable. The general rule is that a deed to lands made while the same are held adversely to the maker of the deed is not void. Civil Code, § 4185. An exception to this rule is that an administrator cannot sell land held adversely to the estate by a third person, but must first recover possession. Civil Code (1910), § 4033; *Hall* v. *Armor,* 68 *Ga.* 449; *Hanesley* v. *Bagley,* 109 *Ga.* 346 (34 S. E. 584); *Lowe* v. *Bivins,* 112 *Ga.* 341 (37 S. E. 374); *Downing Lumber Co.* v. *Medlin,* 136 *Ga.* 665 (72 S. E. 22); *Thrift* v. *Baker,* 144 *Ga.* 508 (87 S. E. 676). A deed made by an administrator when the property is held adversely to the estate by a third person is void. *Booth* v. *Young,* 149 *Ga.* 276 (99 S. E. 886); *Edwards* v. *Sands,* 150 *Ga.* 11 (102 S. E. 426). It is insisted that these principles, which apply to sales by administrators, are equally applicable to sales by executors; and that sales by executors of property held adversely to the estates which they represent are null and void. Does section 4033 apply to sales by executors? Its terms do not embrace executors; but it is said that this section is made applicable to executors by section 3892, which provides, among other things, that "the mode of sale" by administrators shall apply to executors, and that "all other matters in their nature applicable to executors shall be held and taken to apply to and include executors, to the same extent as if they were named therein." In view of this broad language, section 4033 may be applicable to sales by executors. Judge Powell, in his valuable book, takes this view. Powell on Actions for Land, § 249. But we do not think that it is necessary, under the facts of this case, to decide this point. It has been held by this court that sec-

tion 4033 is not applicable to conveyances by executors to devisees of property given them in wills, as the purpose of this section was to prevent the sacrifice of property which would result if sold when held adversely to the estate. *French* v. *Baker, 95 Ga.* 715 (22 S. E. 652); *Weeks* v. *Hosch L. Co., 133 Ga.* 472 (66 S. E. 168, 134 Am. St. R. 213). As we have seen, the testator devised the property in dispute to his executors in trust for certain purposes; and their conveyance of this property was made in pursuance of a power of sale given them touching this trust property. When they sold the same, they were evidently disposing of it, not as the property of the testator, but as property held by them under this trust. Their deed of conveyance, while executed by them as executors, was manifestly made under said trust and as trustees. So these executors did not sell this property as a part of the estate of their testator, but as a part of the property so devised to them in trust. We do not think that we should extend the provisions of section 4033 of the Code to sales by testamentary trustees, even where such trustees are the executors of the will creating the trust. This would be creating an exception to the general rule; and this can only be done by legislative authority.

5. The other assignments of error are without merit, and do not require the grant of a new trial.

*Judgment affirmed. All the Justices concur.*